**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JUDY BARTHOLOMEW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 3492** |
| | ) | |
| **WAL-MART STORES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Judy Bartholomew has sued Wal-Mart Stores, Inc., asserting a claim for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c)(1) (ADEA), and a claim for gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) (Title VII). Wal-Mart has moved for summary judgment on all of Bartholomew's claims. For the following reasons, the Court grants the motion.

### Facts

Because Wal-Mart has moved for summary judgment, the Court views the facts in the light most favorable to Bartholomew and draws reasonable inferences in her favor. *See, e.g.*, *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Bartholomew began her employment with Wal-Mart in 1993. She was terminated by Wal-Mart in April 2006. She was fifty-eight years old at the time of her

1

termination. Bartholomew initially worked at Wal-Mart's Bedford Park store as a cashier. In 1994, she became the personnel manager responsible for the same store. At the time she became personnel manager, the then-manager of the Bedford Park Store, Paul Waldren, promised her a raise of $1.30 an hour. Though she received other compensation increases over the next twelve years, Bartholomew claims she never received the $1.30 raise promised by Waldren. Wal-Mart disputes that she was entitled to any such raise.

As personnel manager, Bartholomew's duties included making sure Wal-Mart's guidelines regarding personnel issues were followed and conducting reviews to ensure that the personnel files were accurate. This included conducting an annual review of every employee (the Week 52 Review). The Week 52 Review involved checking and confirming certain employment records and forms for each employee at an individual store. Bartholomew claims that she completed the Week 52 Review in the same manner for over ten years without objection or questioning by any of her supervisors. Her method involved a two-step process. Wal-Mart claims to be unaware of Bartholomew's two-step process for the Week 52 Review and that it is contrary to Wal-Mart's requirements.

In March 2006, Bartholomew asked for assistance from an assistant manager at the Bedford Park store, Joe Ciaglia, in completing necessary paperwork regarding training plans for employees at the store. Ciaglia mentioned this request to the co-manager of the store, Todd Meldrum. Bartholomew also asked Meldrum and the Bedford Park store manager (the top manager located at the store), Tim Horan, for assistance in completing the Week 52 Review.

Around this time, Meldrum began an investigation to determine whether Bartholomew had accurately completed her Week 52 Review.  At the end of his investigation, Meldrum claims to have found that Bartholomew falsified numerous documents in the Week 52 Review.  Bartholomew denied that any falsifications existed, reiterated that she had not yet completed the Week 52 Review, and stated that the alleged falsifications were actually errors that would be corrected once she had completed the review.  Meldrum reported the results of his investigation to Horan, who in turn reviewed a portion of the documents examined by Meldrum.  Horan concluded that Bartholomew had committed gross misconduct in violation of Wal-Mart policies by falsifying records.  After consulting with Wal-Mart's employment advisory service and his own supervisor, market manager Chad Donath, Horan terminated Bartholomew.

Bartholomew utilized a Wal-Mart policy allowing her to contest the termination. Wal-Mart's market human resource manager, Julie Gianneschi, initially expressed concern that termination was overly harsh after speaking with Bartholomew.  At Donath's request, Gianneschi went to the Bedford Park store to investigate the circumstances of Bartholomew's termination.  Horan and Meldrum were not involved in Gianneschi's investigation.  Following her investigation, Gianneschi determined that it was appropriate to terminate Bartholomew.  On the basis of that recommendation, Donath upheld Bartholomew's termination.

Bartholomew has alleged that Meldrum imposed less stringent disciplinary standards on male and younger female employees.  Of the specific incidents Bartholomew recalls, none concerned a Week 52 Review.  Bartholomew also believed a rumor she heard that Meldrum was dating a store employee in violation of Wal-Mart

policy.  No allegations of such conduct have been made against Horan or Donath.

**Discussion**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

## 1.    Employment termination claims

Claims for discrimination under Title VII "may be proved either directly . . . or indirectly under the burden-shifting method established in *McDonnell Douglas*."  *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).  The same standard is also used to prove ADEA claims.  *E.g.*, *Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 556 (7th Cir. 2001).  Bartholomew has not presented any direct evidence of discrimination; accordingly, she is required to proceed under the indirect method.  Under the indirect method, Bartholomew must show (1) she was a member of a protected class; (2) she was meeting Wal-Mart's legitimate job expectations; (3) she suffered an adverse

4

employment action; and (4) similarly situated employees outside the protected class were treated more favorably. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). If Bartholomew can make this prima facie showing, the burden shifts to Wal-Mart to provide a legitimate, non-discriminatory reason for its actions. If it does so, Bartholomew bears the burden to show that Wal-Mart's proffered reasons are a pretext – a cover story – for unlawful age and/or gender discrimination. *Id.*

Wal-Mart does not dispute that Bartholomew satisfies elements 1 and 3 of the burden-shifting test. Bartholomew was a member of two protected classes (female and over the age of forty), and her employment with Wal-Mart was terminated.

### a.    Wal-Mart's legitimate expectations

Under the burden-shifting test, Bartholomew need only produce "some evidence" that she was meeting Wal-Mart's legitimate expectations. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 743 (7th Cir. 1999). Bartholomew has met that burden. Wal-Mart argues that Bartholomew did not meet job expectations because she falsified documents in violation of company policy and accurately cites Seventh Circuit authority noting that falsifying records constitutes a failure to meet legitimate employer expectations. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 760-61 (7th Cir. 2001). However, genuine issues of fact exist as to whether Bartholomew actually "falsified" documents. Although that is how Wal-Mart has characterized Bartholomew's conduct, she has presented evidence that she had not finished the Week 52 Review and that Meldrum and Horan were aware of this fact. Presumably, any "errors" would have been corrected before the review was finalized.

Additionally, Bartholomew claims that she completed the 52 Week Review in the same manner for over a decade. Wal-Mart correctly notes the relevancy of Bartholomew's performance at the time of termination, not her past performance. *See Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 946 (7th Cir. 2006). Bartholomew's performance in past years is not relevant in determining whether there was a legitimate basis to terminate her in 2006. However, the fact that no one above Bartholomew had objected in the past to her claimed method of completing the 52 Week Review is relevant to whether she falsified the 2006 review.

### b. Similarly situated Wal-Mart employees

The Seventh Circuit has stated that plaintiffs do not face a "hyper-technical" burden of proving that similarly situated employees are "*identical*" to themselves to satisfy the *McDonnell Douglas* burden-shifting test. *Gates*, 513 F.3d at 690 (emphasis in original) (citing *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404-05 (7th Cir. 2007), *aff'd sub nom. CBOCS W., Inc. v. CBOCS W., Inc.*, 128 S. Ct. 1951 (2008)). As a general rule, however, a plaintiff must at least show that the similarly situated employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct. . . ." *Id.* (quotation omitted). Summary judgment on this point is appropriate where a plaintiff provides only vague, "limited information . . . void of statistics or concrete data." *Id.* at 691.

In this case, Bartholomew identifies four putative comparators: (1) a female personnel manager at the Hodgkins Wal-Mart named "Carol"; (2) Ramsey Merrill, who was also a personnel manager at the Hodgkins store; (3) an unnamed female

personnel manager at the Forest Park Wal-Mart; and (4) Ed Feldhaus, a personnel manager at the Bridgeview Wal-Mart. Bartholomew fails to make a prima facie case because she has not presented evidence from which a jury reasonably could find that any of these individuals were similarly situated to her.

It is undisputed that none of the alleged comparators reported to Meldrum or Horan. Bartholomew argues that the other personnel managers still shared the same supervisor as her because they were all ultimately supervised by Donath in his role as manager for the entire "market." Thus, to find a common supervisor, Bartholomew must climb at least two management levels.

On the facts presented, this is not sufficient for a reasonable jury to find that Bartholomew reported to the same supervisor as these other individuals in the way necessary to enable them to be considered comparable to her. Bartholomew claims that Donath did not conduct an independent investigation before upholding her termination, but the deposition transcripts and other evidence submitted by the parties leave no room for a genuine dispute about Wal-Mart's contention that Gianneschi conducted an independent investigation at Donath's request and that Donath affirmed the termination decision based on Gianneschi's investigation. This independent review by an HR manager at the market level undercuts Bartholomew's claims of comparability; the only supervisor in common (Donath) utilized an independent review that was not dependent on the investigation initiated by Meldrum – the only supervisor alleged to have engaged in inappropriate conduct.[1]  *See Brewer v. Bd. of Trs. of Univ.*

---

[1] The supervisor connection to Merrill is even more tenuous. Merrill is not similarly situated to Bartholomew because Merrill ceased to be a personnel manager at

*of Ill.*, 479 F.3d 908, 918 (7th Cir. 2007) ("[W]here a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker. . . . It does not matter that in a particular situation much of the information has come from a single, potentially biased source, so long as the decision maker does not artificially . . . limit her investigation to information from that source.").

The authority relied on by Bartholomew in her response brief supports this conclusion. In *Humphries*, the Seventh Circuit emphasized the importance of using a "flexible," "common-sense factual inquiry" when evaluating whether employees are similarly situated. *Humphries*, 474 F.3d at 405. There, the court found two employees were similarly situated, in part, because they shared both an immediate supervisor and the same ultimate decision maker. *Id.* at 406. Here, the four employees identified by Bartholomew share Donath as a supervisor at the top level but do not share the supervisor claimed to have acted in a discriminatory fashion – or even supervisors only one level removed.

In addition to the absence of a common supervisor, Bartholomew has submitted a paucity of other evidence on the issue of comparability. Bartholomew presents only her own statement that Merrill, "Carol," and the unnamed Forest Park personnel manager are under the age forty. No foundation or basis is given for Bartholomew's

_____

the time Donath became the market manager. Thus, Bartholomew and Merrill did not hold the same positions under the same supervisors during the relevant time frame, undermining a claim of comparability. *See Curry v. Menard, Inc.*, 270 F.3d 473, 478 (7th Cir. 2001).

knowledge, and no other evidence has been presented. Indeed, Bartholomew is unable to provide complete names for two of the four individuals she claims are similarly situated. Nor has she provided evidence describing the qualifications or performance histories of any of the alleged comparators. Bartholomew has not met her burden to provide evidence from which a reasonable jury could find there were similarly situated employees that received more favorable treatment than her. Because Bartholomew cannot meet this element of a prima facie case, it is appropriate to enter summary judgment in Wal-Mart's favor on the ADEA and Title VII termination claims.

### c. Wal-Mart's justification and pretext

Even if Bartholomew could meet her burden to establish a prima facie case of indirect discrimination, summary judgment would still be appropriate because no reasonable jury could find that Wal-Mart's justification for her termination was pretextual. Wal-Mart's reason for terminating Bartholomew was the alleged falsification of the Week 52 Review. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well considered. . . . Pretext is not necessarily established merely when the plaintiff demonstrates the employer's reason was mistaken. An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (quotation omitted).

As detailed above, Horan conducted an independent review of Meldrum's findings. Donath, in turn, ordered Gianneschi to conduct her own review at the store before upholding Bartholomew's termination. Donath's reliance on Gianneschi's independent review demonstrates that Donath honestly believed termination was

appropriate and undercuts Bartholomew's "cat's paw" argument with respect to Meldrum. *See Brewer*, 479 F.3d at 918. Bartholomew has not produced any evidence of bias on the part of Donath or Gianneschi. Thus, her characterization of Meldrum's investigation as a "sham" is not relevant.

Finally, Bartholomew makes passing reference to a "pervasive pattern and practice of gender and age biased behavior under Meldrum's supervision." Again, however, no evidence has been presented linking the allegations concerning Meldrum to Horan, Gianneschi, or Donath. Moreover, a pattern and practice claim requires a plaintiff to show that the type of discrimination alleged was the company's "standard operating procedure." *Adams v. Ameritech Serv., Inc.*, 231 F.3d 414, 422 (7th Cir. 2000). Bartholomew has not submitted evidence from which a jury could find such pervasive conduct here.

## 2. Insufficient pay claims

In addition to suing over her termination under Title VII and the ADEA, Bartholomew also alleges that she is the victim of lost pay under both those statutes. The basis of that claim is the alleged failure to give her a $1.30 an hour wage increase back in 1994, as promised by Waldren, through the current date. Summary judgment is appropriate on this claim because Bartholomew has not provided any direct evidence of discrimination, nor has she attempted to meet her burden under the indirect method. Specifically, Bartholomew does not present evidence that similarly situated employees were treated more favorably with regard to compensation. Rather, Wal-Mart presented evidence, not countered by admissible evidence from Bartholomew, that prior to her termination, Bartholomew was actually the highest paid personnel manager in that

particular Wal-Mart market.

Moreover, when asked in her deposition why she did not receive her pay raise starting in 1994, Bartholomew attributed it to "neglect" in Wal-Mart's administration, not to any gender or age bias. On this evidence, Bartholomew has failed to support a claim of discrimination with regard to her pay, via either the direct or indirect method, making summary judgment appropriate.

### Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 32]. The trial date of January 12, 2009 is vacated. The Clerk is directed to enter judgment in favor of the defendant.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 12, 2008